## The State v. Bobbst, *Appellant.*

### Division Two, December 3, 1895.

1. **Practice, Criminal**: INDICTMENT, PREFERMENT OF: RECORD. Where the record showed that court was properly convened and organized, the grand jury impaneled and an indictment returned which was signed by the prosecuting attorney and indorsed by the foreman of the grand jury and by the clerk's date of filing, the indictment was properly preferred.

2. **Criminal Law**: ENTICING FEMALE: CONCUBINAGE: EVIDENCE: HARMLESS ERROR. On a trial of one for taking a female under eighteen years of age away from her father for the purpose of concubinage, admission of evidence of the father that he sent her money with which to return home was not reversible error.

3. ———: ———: ———: CHASTITY. One indicted under Revised Statutes, 1889, section 3484, for enticing away a female under eighteen years of age for the purpose of concubinage may be convicted, although she was previously unchaste.

4. ———: ———: ———: ———: EVIDENCE. Upon trial of one charged with enticing away a female under eighteen years of age for the purpose of concubinage, the general reputation of such female for chastity may be shown for the purpose of affecting her credibility as a witness, but evidence of specific acts of unchastity are inadmissible for that purpose.

State v. Bobbst.

5. ———: ———: ———: INSTRUCTION. An instruction, on a trial for enticing away a female under eighteen years for the purpose of concubinage, which expressly requires "a cohabiting" "without being lawfully married" in order to convict, is not objectionable upon the ground that it authorizes a conviction upon proof of a single sexual act, or for a night, as the terms employed import a living or dwelling together.

6. ———: ———: ———: CONSENT. The offense of enticing away a female for the purpose of concubinage is completed by the taking away for that purpose and it is not necessary that sexual intercourse should follow the taking; and the consent of the female constitutes no defense.

7. ———: ———: ———: INTENTION OF RETURNING. Testimony of the prosecutrix that she thought of returning home from the first point reached after being taken away is no bar to a conviction, since it was no evidence of defendant's intention, and it appearing the cohabitation continued for some months afterward.

8. ———: ———: ———: PRACTICE: REMARKS OF COUNSEL. On the trial of a defendant charged with enticing away a female under eighteen years old for the purpose of concubinage, reference to the accused by the prosecuting attorney in his argument as "this infamous, lecherous scoundrel" will constitute reversible error.

9. **Practice, Criminal:** REASONABLE DOUBT: INSTRUCTION. The instruction on reasonable doubt approved in *State v. Nueslein*, 25 Mo. 111, defining it to be "a substantial doubt touching defendant's guilt, and not a mere possibility of his innocence," commended.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*Edmonston & Cullen* for appellant.

(1) There is no indictment in the case. The record nowhere shows that the grand jury returned an indictment against defendant. R. S. 1889, sec. 4092. (2) It was error to permit the father of the prosecutrix to testify that he sent her money to enable her to come home. It was not pertinent to any issue in the cause and was

damaging to defendant. (3) The court erred in refusing to admit testimony offered to show that the prosecutrix was a harlot previous to her being taken away by Bobbst. *State v. Gibson*, 111 Mo. 92; *State v. Johnson*, 115 Mo. 480; Kelley's Crim. Law, secs. 552, 554; *State v. Primm*, 98 Mo. 368; *Scruggs v. State*, 90 Tenn. 81. (4) The instruction defining reasonable doubt to be "a substantial doubt growing out of, and consistent with, the evidence," was erroneous and contrary to a long and unbroken line of approved precedents. *State v. Nueslein*, 25 Mo. 111; *State v. Wells*, 111 Mo. 533; *State v. Robinson*, 117 Mo. 649; *State v. Talmage*, 107 Mo. 349. (5) The third instruction defining "concubinage" is erroneous. *State v. Gibson*, 111 Mo. 92, and authorities cited; *State v. Wilkinson*, 121 Mo. 485. The case of the *State v. Feasel*, 74 Mo. 524, has been overruled. (6) Instruction number 4 is objectionable. It is fatally ambiguous, contradictory, unintelligible, and erroneous. (7) There is no evidence that defendant took the prosecutrix away, within the meaning of the statute, for any purpose, and defendant's demurrer to the evidence should have been given, and the state's ninth instruction refused. *Lewis v. People*, 37 Mich. 518; *State v. Crawford*, 34 Iowa, 40; *People v. Plath*, 100 N. Y. 590; Kelley's Crim. Law, sec. 550; *State v. Gibson, supra; State v. Johnson, supra.* (8) The girl left with defendant of her own free will, but even if he induced her to go for any other reason than concubinage he is not guilty, and the court should have so instructed, and failure to do so constitutes reversible error. R. S. 1889, sec. 4208; *State v. Gibson*, 108 Mo. 575; 111 Mo. 92; Kelley's Criminal Law, sec. 517. (9) It was reversible error to permit the prosecuting attorney, without rebuke, to call the defendant "an infamous, lecherous scoundrel." *State v. Fischer*, 124 Mo. 460; *State v. Ulrich*, 110 Mo. 350; *State v. Young*, 99

Mo. 666; *State v. Jackson*, 95 Mo. 623, and cases cited; *State v. Elsner*, 115 Mo. 401; *Busette v. State*, 101 Ind. 85.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general for the state.

(1) It is complained that the court committed reversible error in not reprimanding the prosecuting attorney for his language toward the defendant, in which he referred to him as "this infamous scoundrel." It is not apparent what prejudice defendant could have suffered from this remark. Testimony had already developed the fact that he was devoid of principle as well as honor, and the mere fact that the prosecuting attorney chose to use this language in referring to him could not constitute reversible error. *State v. Emory*, 79 Mo. 461; *State v. Zumbunson*, 86 Mo. 111. (2) The third instruction properly declared the law. It told the jury that if the defendant took Martha Butler from the control and possession of her father, and that Martha Butler at the time was under the age of eighteen years, for the purpose of concubinage, then the defendant was guilty, and advised the jury as to the extent of the punishment to be assessed. The fourth told the jury that the question of the chastity of the prosecutrix could only be considered by them for the purpose of determining what credit should be attached to her testimony, and the fact that she was not virtuous would not constitute a defense; in other words, that it was as much a crime, under our statute, to abduct a girl without virtue or chastity as it was one who was virtuous, chaste, and pure. The fifth, that if the jury found that the prosecutrix, prior to the time of the taking away, made her home with her father, then the presumption was that she was still under the control and care of the father, even though at the exact time of the alleged

departure, and for some days prior thereto, she had been at the home of her sister. The sixth advised the jury as to the credit to be attached to the testimony of the defendant and his wife. The seventh, as to the credibility of the witnesses generally. The eighth, as to the presumption of innocence that attends the defendant, and defines a reasonable doubt. The ninth, as to what facts constituted the taking away of the prosecutrix under the law. The tenth, as to the form of the verdict. The defendant asked no instructions, and none were refused. The foregoing were all given by the court of its own motion, and when read together, following the now well settled law in this state, will be found to be exceedingly liberal to the defendant, and not subject to the criticism urged by him. *State v. Johnson*, 115 Mo. 480; *State v. Richardson*, 117 Mo. 586; *State v. Gibson*, 108 Mo. 575. (3) The only testimony offered by the defendant, and excluded by the court, was such as had a tendency or was offered for the purpose of establishing specific acts of unchastity and lewd and unladylike conduct on the part of the prosecutrix. It is now well settled in this state that specific acts of unchastity and conduct, however lewd on the part of the prosecutrix, are inadmissible in prosecutions for abduction. *State v. Johnson*, 115 Mo. 480; *State v. Richardson*, 117 Mo. 586; *State v. Gibson*, 108 Mo. 575. (4) The motion for a new trial in this case contains twenty-one allegations of error, a large number of which are untrue, unwarranted, and unsupported by the record. For instance, that the defendant was not awarded process for witnesses; that the sheriff refused to serve subpoenas; that since the verdict he has discovered new and material testimony, which is said to be shown by affidavits filed; because the court failed to give defendant a full panel of jurors from which to select, and because the jury were allowed to

separate; all of which are untrue and unwarranted by the record. Allegations in motions for new trial do not prove themselves. *State v. Foster*, 115 Mo. 448. (5) The allegation that the court had no jurisdiction over the person of defendant is unsupported by the record. The verdict is sufficient and in the usual form, and the only remaining question for review is as to the sufficiency of the indictment, which is in the usual form and clearly charges the offense of which the defendant was charged and has been convicted. R. S. 1889, sec. 3834.

GANTT, P. J.—The defendant was indicted at the April term, 1893, of the circuit court of Montgomery county. There are two counts in the indictment; in the first he was charged with taking Martha B. Butler, a female child under the age of eighteen years, from the custody of her father, for the purpose of prostitution; in the second count he is charged with having taken her on October 12, 1892, from the custody of her father, for the purpose of concubinage and cohabitation with him as man and wife without authority of law and without legal marriage, against the peace and dignity of the state. He was acquitted on the first count and convicted on the second. He obtained various continuances and a change of venue to Audrain county. The trial was had at the September adjourned term, 1894. No reason appears why this transcript was not filed in this court until July 12, 1895.

The attention of the various circuit and criminal courts is hereby called to the wholly inexcusable delays that are constantly occurring by reason of the failure to certify these cases promptly to this court, with the hope that they will see to it that appeals are promptly certified.

The record substantially shows that Martha B.

Butler was born on the nineteenth of November, 1875, and during September and October, 1892, and at all times prior thereto, she resided with her father, Isaac Butler, and mother, in Montgomery county, Missouri; that she had a sister by the name of Mrs. Switzer living about a mile from the home of her father; that during September her father allowed her to go to the house of her sister temporarily to assist her in cooking for some harvest hands; that while at the home of her sister the defendant persuaded and induced her to leave the residence of her sister and to accompany him, defendant taking with him a wagon and buggy; that they started together, and drove from the home of the sister, first to Wellsville, Missouri, then to Mexico, Boonville, and from there to Guthrie, Oklahoma. It is shown by the testimony that at Mexico they were joined by another female, a Miss Outenwreath; that the defendant cohabited and had intercourse with Miss Butler at divers points along the road from Montgomery county to Oklahoma; that in Oklahoma, where she remained some months, and until her father sent her money on which to return home, they lived and cohabited together.

The defenses offered in this case are the bad reputation of the prosecutrix, and that when they reached Wellsville, Missouri, en route to Oklahoma, the defendant urged and insisted that the prosecutrix return home.

It is very evident that prior to this time her ruin had been accomplished. It is also in evidence that the father of the prosecutrix made every effort possible to ascertain the whereabouts of his daughter, in order that he might compel her to return home, and that as soon as he learned of her whereabouts he sent her money on which to return. It is fairly established by the testimony that at the time of the abduction the

prosecutrix was under the age of eighteen years though an attempt was made by the defendant to show by one or two of the neighbors that she was over the age of eighteen years at the time of the abduction.

Various errors are assigned for a reversal of the judgment. There are twenty-one distinct grounds for a new trial set out in the motion, and twelve in the motion in arrest. Counsel who drew the motion in arrest seems to have confused the prosecution with some civil case, as we find, among other reasons for arresting the judgment, the following: "3. The petition does not state facts sufficient to constitute a cause of action herein." "5. *That the answer does not state facts sufficient to constitute a defense to plaintiff's cause of action.*" Many of the other grounds are utterly meaningless as applied to this case. We shall consider those now urged in the brief.

I. There is no merit whatever in the point that the court had no jurisdiction because no indictment had been preferred. The record amply shows the circuit court of Montgomery county convened and was organized as required by the law, the impaneling of the grand jury, and the return of the indictment signed by the prosecuting attorney and duly indorsed by the foreman of the grand jury, F. M. Hayden, with the clerk's indorsement of filing thereon of April 25, 1893. *State v. Lord*, 118 Mo. 1.

II. There was no reversible error in permitting the father of the prosecutrix to testify that he sent his daughter, the prosecutrix, $16 to enable her to return home from Oklahoma. Defendant and his wife both testified the girl went to Oklahoma with them and while we can not see how it was material to the issue, we can not see how it was prejudicial. It seems to us wholly immaterial but not hurtful to defendant and

he evidently took the same view as he did not object to it.

III. Defendant assigns as error the refusal of the trial court to permit defendant to prove by various witnesses specific acts of unchastity. The court admitted evidence tending to show that her general reputation for chastity and virtue was bad but refused the evidence of individual acts of this character and indicated its view of the law by the following instruction:

"The court instructs the jury that the fact whether the prosecuting witness, Martha B. Butler, was a virtuous girl or not at and prior to the time of her alleged taking away by defendant, or since, is not involved in this case and should not be considered by the jury in determining the defendant's guilt as charged, but if the jury believe from the evidence that her general reputation for chastity and virtue in the neighborhood in which she lived is bad, that fact may be considered by the jury in determining the credit to be attached to her testimony as a witness."

The ruling of the learned circuit court is in accord with the decision of this court in *State v. Johnson*, 115 Mo. 480. In that case this court, through Judge Burgess, said: "We think, as was said in the case of the *People v. Demousset, supra* (12 Pac. Rep. 788, by the supreme court of California), that the statute was intended to protect the chaste as well as to reclaim the unchaste."

So long as this girl was under the protection of her father the law threw its protection over her. Its purpose was to protect parents and guardians in their custody and care of minor females without regard to their chastity, and their families from sorrow and disgrace. The legislature might have required the girl to be chaste but it did not, and as against one who

inveigles the daughter or ward from the roof of her father or guardian to lead with him a life of prostitution or illegal concubinage we neither have the right nor inclination to interpolate one word that would detract from its effectiveness.

It will be observed that, unlike the somewhat kindred statute for the punishment of seduction *it does not require the female to be of good repute,* and in this respect materially differs from the statutes of Iowa and New York on this subject.

As this case must be reversed for another cause, we suggest that the structure of the instruction is unfortunate. Instead of saying the fact whether she was virtuous or not was not involved in the case and was not to be considered, we think it better to have instructed the jury that although they might believe from the evidence that the general reputation of Martha B. Butler for chastity and virtue was bad, her want of chastity constituted no justification to anyone to take her from her father's custody for the purpose of prostitution or concubinage, but should be considered by the jury in weighing her testimony, and was admitted for that purpose only.

IV.   The third instruction is not open to the objection that it improperly defines concubinage or permits the defendant to be convicted for a single sexual act, or for a night. On the contrary, it expressly requires "a *cohabiting*" "without being lawfully married," which phrase "*ex vi termini,*" imports a living or dwelling together.

V.   There was no error in overruling the demurrer to the evidence. That defendant took the girl from her home and kept her with him in his journey to Oklahoma is uncontroverted, and that she was ignorant of his alleged marriage to Miss Outenwreath until she

reached Mexico. In the meantime, to use her own words, "she had been ruined," and when he told her she could go home she preferred going with him to hide her shame.

It was not necessary that the taking away should have been accompanied by sexual intercourse. The offense was complete when he took her for that purpose. His subsequent conduct in continuing that intercourse, though claiming to be married, was evidence of his original purpose. Her willingness to go on with him, when he reached Wellsville and Mexico is no palliation whatever for his offense. Her consent constitutes no defense. *State v. Gibson*, 111 Mo. 92; *State v. Round*, 82 Mo. 679; *State v. Johnson*, 115 Mo. 480; *State v. Stone*, 106 Mo. 1.

It is insisted because the prosecutrix said she thought she would go back from Wellsville, that this conclusively shows the defendant did not intend to cohabit with her for any length of time. We do not think it follows at all. This was evidence of her intention, not his. The jury might well have found that she was induced to go that far with him by persuasion. Certain it is she testifies he promised to marry her if she would go on to Mexico. There is no explanation why this young girl should be traveling, in the night, from her home, with this man alone. She had not been engaged by him as a servant with her father's consent; she was not a relative of his; and her testimony, ignorant as she and her family all seem to be, indicates she had been induced to go with defendant, and maintain this unlawful relation with him, and that it continued for several months.

VI. In the closing argument to the jury, the prosecuting attorney turned to the prisoner, at the bar of the court, and denounced him as "this infamous, lecherous scoundrel." The counsel for defendant pro-

tested, but the court declined to rebuke the prosecuting attorney, and defendant excepted. We can not too strongly express our disapproval of such language and such conduct in one charged with the important duty of representing the state in a public prosecution. Counsel have no right to indulge in such abuse of a prisoner. Such language should have been instantly rebuked by the court. It was a serious contempt to the dignity of the court, and an altogether unwarranted assault upon the prisoner. Again and again we have reversed causes for such conduct, and must, and will, continue to do so until the prosecuting attorneys understand that no man, however guilty, can be punished in this state, with our approval, until he has had a fair and impartial trial. The judgment is reversed and cause remanded for this misconduct. *State v. Jackson*, 95 Mo. 623; *State v. Ulrich*, 110 Mo. 350; *State v. Fischer*, 124 Mo. 460.

VII. If the case shall be again tried the instruction on reasonable doubt should be made to conform to the formula approved by this court in *State v. Nueslein*, 25 Mo. 111, and ever since adhered to. The judgment reversed and cause remanded. SHERWOOD and BURGESS, JJ., concur.