STATE OF CONNECTICUT *v.* LARRY EUGENE BROWN

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

---

Argued November 16, 1976—decision released March 15, 1977

*Joseph M. Brophy,* special public defender, for the appellant (defendant).

*Thomas E. Minogue, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard F. Jacobson,* assistant state's attorney, for the appellee (state).

LOISELLE, J. After a jury trial the defendant was found guilty of robbery in the second degree. From the judgment entered on the verdict, he appealed to this court.

The defendant claims that the court erred in admitting certain evidence and in portions of the charge to the jury. His brief contains none of the material required by Practice Book § 631A to support such a claim; he has printed neither the rulings on evidence, his objections or exceptions, nor the charges to the jury, thus the claims will not be considered. He also claims that the trial court erred

in denying his motion to dismiss for failure of the state to present a prima facie case. Denial of such a motion is not properly assignable as error. *State* v. *Ralls,* 167 Conn. 408, 415 n.2, 356 A.2d 147; *State* v. *Dubina,* 164 Conn. 95, 101, 318 A.2d 95; Maltbie, Conn. App. Proc. § 212.

The defendant claims that he was denied his right to a speedy trial, which is guaranteed by the sixth amendment to the United States constitution and by article first, § 8, of the Connecticut constitution. The state's brief, which is not contradicted by the defendant, gives the following chronology:

| | |
|---|---|
| November 8, 1974 | Bindover to Superior Court. |
| December 3, 1974 | Plea of not guilty. |
| December 6, 1974 | Motions for bill of particulars and discovery filed. |
| December 20, 1974 | Compliance with earlier motions by the state. |
| January 24, 1975 | Request for appointment of a special public defender filed. |
| January 31, 1975 | Motion denied. |
| February 26, 1975 | Motion for speedy trial filed. |
| April 30, 1975 | Oral motion for a special public defender granted and Attorney Joseph M. Brophy appointed. |
| May 6, 1975[1] | Motion for speedy trial denied without prejudice. |
| June 25, 1975 | Motion to dismiss denied and trial ordered for July. |
| August 7, 1975 | Trial commences. |

[1] The record also shows that on May 29, 1975, the defendant filed a motion to dismiss for denial of a speedy trial.

Assuming that the defendant was arrested on the date of the offense charged, nine months and eight days elapsed between the arrest and the trial.

The Supreme Court's opinion in *Klopfer* v. *North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1, established that the sixth amendment guarantee of the right to a speedy trial is "fundamental" and is imposed by the fourteenth amendment on the states. In *Moore* v. *Arizona*, 414 U.S. 25, 94 S. Ct. 188, 38 L. Ed. 2d 183, the Supreme Court agreed with the state that a delay of about three years before trial of one charged with murder who was already serving a prison term was arguably excusable. The state court had ruled that an affirmative demonstration of prejudice to the defense at trial was necessary to prove a denial of the constitutional right to a speedy trial. The Supreme Court remanded the case for the state court to determine if there was a violation of the accused's fundamental rights under the sixth amendment under the standards mandated by *Smith* v. *Hooey*, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed. 2d 607, *Dickey* v. *Florida*, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26, and *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101.

In *Smith* v. *Hooey*, supra, the defendant was indicted by a state court while a prisoner in a federal penitentiary in another state. Thereafter for the next six years by letters and "motions" he continually sought trial. When his mandamus action was dismissed, certiorari was granted by the Supreme Court, which stated (p. 378) that the constitutional guarantee protects at least three basic demands: " '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will

impair the ability of an accused to defend himself.' *United States* v. *Ewell,* 383 U.S. 116, 120 [86 S. Ct. 773, 15 L. Ed. 2d 627]." The court held that the state court had a constitutional duty to make an effort to bring the accused to trial and remanded the case for further proceedings.

In *Dickey* v. *Florida,* supra, a state court secured an arrest warrant charging the defendant with robbery after he was taken into custody and imprisoned by federal authorities. He unsuccessfully made repeated requests to the state court for trial. After more than seven years had passed since the robbery, an information was filed charging him with robbery. After conviction, the Supreme Court vacated the judgment. It stated (p. 37) that "[t]he right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed." It noted (p. 38) that the delay in that case was "exclusively for the convenience of the State," that there was "abundant evidence of actual prejudice to [the defendant] in the death of two potential witnesses, unavailability of another, and the loss of police records." The court ordered the judgment vacated and the proceedings dismissed.

In *Barker* v. *Wingo,* supra, the defendant was not brought to trial for murder until more than five years after his arrest. He had been confined for ten months before he was released on bail. The prosecution obtained numerous continuances for the purpose of trying the defendant's alleged accomplice so that his testimony, if conviction resulted, would be available at the defendant's trial. The accomplice was tried six times. After the passage of three and one-half years, the defendant made his claim for a speedy trial. The court stated that a

defendant's constitutional right to a speedy trial is a vaguer concept than other procedural rights and its denial cannot be established by any inflexible rule. It set up a balancing test in which at least four factors should be considered: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id., 530.

The cases recognize that an accused's sixth amendment right to a speedy trial is necessarily relative. It is constitutionally permissible that there be some delay in prosecuting a criminal case, but the delay cannot be inordinate, deliberate or oppressive. Whether the delay involved in completing a particular criminal prosecution violates the accused's right to a speedy trial depends on the circumstances, taking into consideration the factors which *Moore* v. *Arizona* mandates. See annot., 21 L. Ed. 2d 905.

The defendant in the present case was incarcerated for nine months and eight days before his trial. Although nine months is not an overwhelming period of time, it is of such length that there is a necessity for inquiry into the other factors that go into the balance. *State* v. *L'Heureux,* 166 Conn. 312, 319, 348 A.2d 578. The state, in its brief, refers to the crowded criminal dockets. In *Barker* v. *Wingo,* supra, 531, it was stated that a neutral reason such as overcrowded dockets should be weighed less heavily than a deliberate attempt to delay on the part of the state but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the state rather than with the defendant. In the present case, the binding over process and plea in the Superior Court

took about a month. Another month was involved with motions by the defendant. Evidently the defendant was unhappy with his counsel, for in January he requested another counsel. In April, after his second request, another counsel was appointed. In June, the trial was ordered for July. The trial did commence on August 7, about three months after the appointment of his present counsel.

As to the defendant's assertion of the right, the record reveals that a motion for a speedy trial was filed on February 26, and it appears that this motion was denied May 6 without prejudice. On May 29 the defendant moved for a dismissal of the information and it was denied at the same time that a trial was ordered for July. Whether the motions were made purely pro forma or were made with force and deliberation is not shown by the record. See *Barker* v. *Wingo,* supra, 529. At any rate, the defendant made two motions to the court asserting the right to a speedy trial and did not acquiesce in the delay.

The final factor to be considered is that of prejudice. In *Barker* v. *Wingo,* supra, 532, the court reiterated the matters that it had previously outlined as basic demands to protect constitutional guarantees. *Smith* v. *Hooey,* supra. Other than the time span, there is no evidence presented in this appeal to indicate any prejudice to the defendant save that of incarceration nor does the defendant claim his defense was impaired. In *State* v. *L'Heureux,* supra, this court held that a nine-month delay did not amount to a denial of a speedy trial absent prejudice in preparing the defense. In that case, however, the defendant was incarcerated pending the disposition of three counts and his motion for a speedy trial was only aimed at one count.

In balancing the factors, it is clear that the length of delay between arrest and trial was substantial. The defendant also made two motions asserting the right to a speedy trial. The countervailing factors are that a strong excuse exists for at least one month's delay in consideration of the defendant's motions, and some delay is permissible under ordinary circumstances for binding over purposes and to prepare for trial. Although overcrowded dockets should not be an excuse, that factor does indicate that the delay was not deliberate. Further, the only prejudice is that of incarceration.

On balance, the defendant was not deprived of his right to a speedy trial.

There is no error.

In this opinion HOUSE, C. J., LONGO and BARBER, Js., concurred.

BOGDANSKI, J. (dissenting). In my view, the majority have failed to apply the balancing test concerning the right to a speedy trial as enunciated by the United States Supreme Court in *Barker* v. *Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101, and *Moore* v. *Arizona,* 414 U.S. 25, 94 S. Ct. 188, 38 L. Ed. 2d 183. In *Barker,* reaffirmed in *Moore,* the Supreme Court stated (p. 530) that "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis," and identified four factors which the courts should assess: "[L]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." The court further stated (p. 533) that "[w]e regard none of the four factors identified above as either a *necessary* or *sufficient* condi-

tion to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no *talismanic* qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (Emphasis added.) *Barker* v. *Wingo,* supra; *Moore* v. *Arizona,* supra, 25.

In the present case, the defendant was not tried until nine months and eight days after his arrest during which time he remained incarcerated. In *State* v. *Orsini,* 155 Conn. 367, 232 A.2d 907, a delay of eleven months between arrest and trial precipitated the accused's due process claim. In circumstances where the accused was free on bond, never made any request for either a speedy trial or a trial date, and never raised the issue until the time of trial, this court rejected his speedy trial claim because of his "acquiescence in the delay and his failure to make any demand for a trial." Id., 378. The court added, however, that "on its face a delay of about eleven months, unexplained, would seem an undue delay." Ibid; see also *United States* v. *West,* 504 F.2d 253 (D.C. Cir.) (a delay of one year gives prima facie merit to the sixth amendment challenge and a delay of six months is subject to inquiry and need for justification).

The second factor to be considered under the *Barker* rationale is what, if any, reason existed for the delay. No reason for the delay in the present case appears in the record nor has the prosecution

offered any satisfactory explanation. What is apparent, however, is that the defendant neither caused nor acquiesced in the delay.

The third factor relates to the defendant's assertion of his right to a speedy trial. On the assumption that a person is likely to complain if his rights are being prejudiced, a failure to complain makes it more difficult for that person to establish at a later time that he was, in fact, prejudiced. When dissatisfaction with the progress of his case is voiced in some manner, that assertion of right is given strong evidentiary weight in a subsequent determination of whether the defendant has been deprived of his right to a speedy trial. *Barker* v. *Wingo,* supra, 531–32. The record shows that the defendant moved for a speedy trial six weeks after the case was first assigned for trial, some four months after his arrest. The court denied that motion on May 6, 1975. Six weeks later he moved for a dismissal of the indictment for lack of a speedy trial. The court denied that motion also. The latter motion was renewed prior to the commencement of the trial and was again denied.

The fourth factor to be considered is the prejudice which can follow as the result of a delay. The *Barker* court identified three potentially affected interests which the speedy trial requirement was designed to secure. They are: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) the limitation of the possibility that the defendant's ability to present a defense would be impaired. Id., 532. The court further stated (p. 532): "The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a

job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."

The majority place reliance on the defendant's motion for the appointment of a special public defender as indicative of delay caused by him. An examination of the case file does not support such reliance. The case docket discloses that the defendant filed a motion for the appointment of a special public defender on January 24, 1975; that seven days later, on January 31, 1975, that motion was denied by the court. The most that can be claimed by the filing of that motion is a delay of seven days.

The docket further reveals that on February 26, 1975, the defendant filed his motion for a speedy trial; that that motion was denied by the court on May 6, 1975, two and a half months later; that on May 29, 1975, the defendant filed a motion to dismiss for lack of a speedy trial, which motion was denied by the court on June 25, 1975.

On balance, in view of the totality of circumstances involved in this case, where the state has permitted a delay of over nine months from the time of arrest to the time of trial, without explana-

tion or justification despite the repeated, properly presented claims for a speedy trial by a defendant who remained continuously incarcerated during said period, the delay was undue.

I would find error, set aside the judgment and remand the case with direction to render judgment that the defendant be discharged.